### SCHLOSS et al. v. TROMAN et al.

(Supreme Court, Appellate Division, First Department. January 10, 1913.)

1. MECHANICS' LIENS (§ 254*)—RIGHTS OF SUBCONTRACTOR—AMOUNT PAYABLE UNDER CONTRACT—AGREEMENT WITH PRINCIPAL.

   Where the lienor was induced to furnish materials to a building contractor by the agreement of the owner that he would not reduce the amount due the building contractor by claiming liquidated damages for delay in completing the contract, the owner was precluded from claiming such damages as against the claim of the lienor for materials furnished both before and after such agreement, since the furnishing of any materials was a sufficient consideration for the agreement to waive the right to claim such damages as against the whole claim.

   [Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 447, 448; Dec. Dig. § 254.*]

2. MECHANICS' LIENS (§ 254*)—DELAY—DAMAGES—RIGHTS OF SUBCONTRACTOR.

   An agreement by an owner with a subcontractor that he would not reduce the amount due the principal contractor by claiming liquidated damages for delay in the completion of the contract inured to the benefit

of a party furnishing materials to the subcontractor, although he did not know of such agreement when he furnished the materials.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 447, 448; Dec. Dig. § 254.*]

3. MECHANICS' LIENS (§ 254*)—DELAY—DAMAGES—RIGHTS OF SUBCONTRAC-
TOR.

Where a subcontractor delayed filing its lien, and thereby lost its right of priority, in reliance on the owner's statement that he would not claim liquidated damages from the principal contractor, and thereby re-duce the amount subject to liens, the subcontractor, on the theory of estoppel, was only entitled to such benefits as would have followed the filing of its lien at the time it was induced to refrain from doing so, which necessarily involved a determination of the amount of liquidated damages which the owner was entitled to deduct, but, if there was an agreement by the owner in consideration of such delay in filing that he would not claim such liquidated damages, they could not be claimed as against the subcontractor, whether or not it was prejudiced by the delay.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 447, 448; Dec. Dig. § 254.*]

4. MECHANICS' LIENS (§ 281*)—ENFORCEMENT—SUFFICIENCY OF EVIDENCE.

Where the evidence showed that a subcontractor's manager with the principal contractor called on the owner, spoke to the owner about the provision in the contract relative to liquidated damages, and stated that his company would file a lien unless it was assured of getting its money, that he was told by the owner that it was unnecessary to file a lien, that there was ample money to pay all claims, and that all claims would be paid, and that the subcontractor did delay filing its lien until other liens had been filed, it sufficiently showed an agreement by the owner not to claim the liquidated damages and a delay by the subcontractor in filing its lien in reliance thereon.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 565–572; Dec. Dig. § 281.*]

Appeal from Trial Term, New York County.

Action by Hugo N. Schloss and another against Joseph Troman and others for a determination of the amount due from plaintiffs under a contract with the defendant named. From a judgment foreclosing mechanics' liens in favor of defendants Willson & Adams Company and others, plaintiffs appeal. Affirmed.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGH-LIN, MILLER, and DOWLING, JJ.

Benjamin N. Cardozo, of New York City (Herbert R. Limburg, of New York City, on the brief), for appellants.

Edgar J. Phillips, of New York City (Frank M. Avery, of New York City, on the brief), for respondent Willson & Adams Co.

Everett P. Wheeler, of New York City (Henry M. Hewitt, of New York City on the brief), for respondents Marcus Woodworking Co. and Mt. Vernon Builders' Supply Co.

LAUGHLIN, J. On the 11th day of August, 1910, the plaintiffs, who owned the premises situate at the southeasterly corner of 229th street and Bronxwood avenue, borough of the Bronx, New York, con-tracted in writing with the defendant Joseph Troman for the erection of a two-story factory building thereon, for which they agreed to pay

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

$17,775, and on the 26th day of the same month they ordered extra work in connection therewith, for which they agreed to pay $350, making the total contract price of the work $18,125. The lien filed by the Mt. Vernon Company was for material furnished to Troman and used in the building. Troman sublet the carpenter work to one Staker, who is not a party to the action, and the other two liens filed were for material furnished to Staker and used in the building under his subcontract. The first lien filed was by the Willson & Adams Company November 11, 1910. Thereafter and on the same day the Marcus Company filed its lien; but the Mt. Vernon Company, which had fully performed its contract before the other liens were filed, did not file a lien until December 5, 1910. The lienors having failed to commence an action to foreclose their liens, the plaintiffs, instead of calling upon them to do so, brought this action on February 1, 1911, for a judicial determination with respect to the amount due from them to Troman, and for the distribution of the fund and cancellation of the liens. The action was tried as if it were one brought by a lienor for the foreclosure of his lien, and no question with respect to the form of the action is presented.

Before the liens were filed, plaintiffs paid to Troman on account of the contract price of the work the sum of $12,000, leaving a balance of $6,125 unpaid at that time, and when the action was commenced. The contract required Troman to complete the building on or before September 29, 1910, or within seven weeks, and it was therein provided that time was to be of the essence of the contract, and that the contractor was to receive $50 for each day of completion prior to September 29, 1910, and to pay as liquidated damages $50 for each day required to complete the contract after September 29, 1910. On the day Troman was required by the contract to have the factory building completed he had not substantially performed, but the plaintiffs took possession to such extent as they could, and installed and operated certain machines for the manufacture of lace. Troman continued the work under the contract, at least, until after the middle of December, 1910, and on January 11, 1911, the architect for plaintiffs employed Staker, the subcontractor for the carpenter work, to complete certain remaining items of work required by the contract. There is a conflict in the evidence both with respect to the work left uncompleted by Troman, and the reasonable cost thereof. The trial court determined that the reasonable cost of completing in accordance with the contract after the last work performed by Troman was $446.49; and that finding is fairly sustained by the evidence. The cost of completion deducted from the balance of the contract price unpaid leaves a balance of $5,678.51, which is sufficient to pay all of the liens in full due and owing on the contract, unless the plaintiffs are entitled to appropriate or retain the whole or part of it as liquidated damages. On the conflicting evidence with respect to the time when the contract was substantially performed the court made no finding, and expressed the opinion that such a finding was not material to a decision of the issues. The amount of liquidated damages to which the plaintiffs may be entitled depends upon when the work

was substantially completed, and therefore it was necessary to determine that time unless the amount due to the general contractor is not subject to reduction as against the lienors, or unless the plaintiffs have by estoppel or contract lost their right to insist upon liquidated damages as against the lienors. It is not necessary to discuss or to decide the question as to whether the amount due the general contractor is subject to reduction on account of the liquidated damages because for other reasons the plaintiffs are not in a position to claim liquidated damages as against any of the lienors.

[1, 2] No extended argument is required to sustain the trial court with respect to two of the liens. The evidence warranted a finding that the Marcus Company was induced to furnish materials on the agreement of plaintiffs that they would not claim liquidated damages. The argument that the agreement, at most, only precludes plaintiffs from enforcing the liquidated damages with respect to the materials subsequently furnished is untenable. Furnishing any materials constituted a sufficient consideration for the agreement to waive the right to assert damages, not only as against the claim for materials to be furnished, but also for those theretofore furnished. The Willson & Adams Company does not base its claim upon estoppel or contract made between it and the plaintiffs. It relies upon evidence showing that, before it furnished all of the materials to Staker, the plaintiffs had agreed with him that, if he would fully perform his contract with Troman, the liquidated damage clause would not be enforced, and that, relying thereon, he did perform. When the Willson & Adams Company furnished the remaining materials to Staker, it was not aware of this agreement between him and the plaintiffs. If Staker had had the materials on hand, and had furnished and delivered them pursuant to his contract with Troman, there could be no doubt that in these circumstances that would have constituted a good executed consideration for the agreement on the part of the plaintiffs not to claim liquidated damages which might have so depleted the fund that nothing would remain applicable to payment for the materials thus furnished or for those theretofore furnished. I perceive no valid reason why those who furnished the materials do not stand in Staker's shoes, and therefore I am of opinion that it should be held that the agreement inured to the benefit of the Willson & Adams Co.

[3] The Mt. Vernon Company delivered all of the materials, on account of which it asserts a lien, before the occurrences upon which it bases its right to recover. This lienor claims that, after furnishing and delivering the materials, it was induced by plaintiffs to refrain from filing a lien therefor, and thereby it lost the priority it would have had over the other lienors whose liens had not then been filed. The evidence sustains that contention. On the theory of estoppel, however, the lienor would only be entitled to such benefits as would have followed the filing of its lien at the time it was induced to refrain from so doing. That would necessarily involve a determination with respect to the amount of the liquidated damages, provided the plaintiffs would be entitled to deduct liquidated damages from the amount unpaid on the contract price, for in no other manner could it be ascer-

tained what amount, if any, remained due and owing from the plaintiffs to Troman and applicable to the payment of mechanic's liens. If the evidence showed an agreement on the part of the plaintiffs with this lienor that they would waive, or would not claim, liquidated damages if it refrained for the time being from filing a lien, and it, relying thereon, refrained from filing a lien, which would have preserved its rights as they then existed, that would constitute a sufficient consideration, and it would not be necessary to inquire to what extent, if any, it was prejudiced by deferring the filing of the lien.

[4] The evidence on this point is not entirely satisfactory, but I think that it is sufficient to warrant the inference that this was the intention of the parties. The Mt. Vernon Company evidently contemplated filing a lien unless it received satisfactory assurances that its claim was not in jeopardy. To that end, its manager interviewed Troman and they together called upon the plaintiff Schloss. The testimony with respect to this interview is conflicting; but that upon which the Mt. Vernon Company relies tends to show that its manager spoke to Schloss about the penalty, and stated that his company would file a lien unless it was sure of getting its money, and was assured by Schloss that it was not necessary to file a lien, and that there was ample money to pay all claims against the work, and that, while plaintiffs did not then wish to advance money on the work, in due time the Mt. Vernon Company and all others would be paid. Although this evidence is somewhat meager and indefinite, it is evident therefrom that the plaintiffs were interested in not having a lien filed which would have precipitated the filing of other liens, and it is a reasonable inference that the plaintiffs intended to agree with the Mt. Vernon Company not to enforce the liquidated damage clause of the contract, and that the latter company so understood, and, relying thereon, refrained from filing a lien until long after the other liens had been filed, and the situation had become so changed that the filing of its lien did not prejudice the plaintiffs.

It follows, therefore, that the judgment should be affirmed, with costs. All concur.